

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

OCT 24 2005

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

| | | |
|---|---|---|
| GLORIA J. WALLS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:05-CV-053-C |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Plaintiff Gloria J. Walls seeks judicial review of a decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court reverse and remand the Commissioner's decision.

## I.   Facts

Walls previously worked as a Certified Nurse's Aid (CNA) and was employed at a convalescent care center. (Tr. 103, 265, 272.) In early summer 2002 a resident at the care center kicked Walls in her left leg which required emergency care that day. (Tr. 271-72.) An emergency room physician recommended that Walls follow up with Jack Henry, M.D.,

an orthopedic physician. (Tr. 272.) Dr. Henry examined Walls on June 18, 2002. (Tr. 130-31.) Walls reported that she had experienced right hip pain for several months that had progressively worsened and that caused discomfort with extended activities. X-rays indicated findings consistent with avascular necrosis (AVN)[1] in Walls' right femoral head (hip). *Id*. Dr. Henry completed a status report with his clinic's letterhead indicating that Walls was unable to work effective June 18, 2002. (Tr. 133.)

In September 2002 Dr. Henry noted that Walls had experienced a twenty pound weight loss and that she looked "quite emaciated." (Tr. 220.) He also noted decreased range of motion in her hip and indicated that a decompression of the femoral head of her hip might be the appropriate course of treatment, but determined that before proceeding Walls should be examined by an internist to determine the cause of her weight loss. (*Id*.) Walls' weight loss was attributed to decreased appetite (Tr. 194), and by November 2002 her weight loss had stabilized and Walls' general practitioner believed that she could withstand surgery (Tr. 198).

Thereafter, on November 4, 2002, Walls underwent a consultative medical examination with Walter Hyde, M.D. (Tr. 135-37.) Among Dr. Hyde's findings were that

---

[1]

AVN is a disease resulting from blood loss to the bones. *See* HealthLink, Medical College of Wisconsin, www.healthlink.mcw.edu/article/926046182.html (last visited October 18, 2005). Without blood bone tissue dies, and the condition in bones near joints often causes joint collapse. The condition is sometimes resolved with the rebuilding of bone. However, when the bone does not rebuild, collapse may occur as well as severe pain, disabling osteoarthritis, and limitation in range of motion. *Id*. Three of the most common causes of AVN are injury, excessive alcohol use, and treatment with steroid medications such as prednisone. *Id*. Dr. Henry noted that Walls denied treatment with steroids and alcohol abuse and it should be noted that the injury Walls sustained as a CNA was to her left leg rather than her right leg or hip. (Tr. 130, 213, 272.) Dr. Henry was unable to determine the cause of Walls' AVN. (Tr. 153, 230.)

2

x-rays showed AVN in Walls' right hip and that range of motion in the hip was diminished and painful. (Tr. 137.) He noted that Walls was "able to sit, stand, and move about without much difficulty" but that lifting, carrying, and handling objects in excess of fifteen pounds would be difficult "due to poor conditioning."

One month later Dr. Henry noted that new x-rays were "not quite as suggestive of AVN"; however, he noted that a total hip replacement might be necessary in the future. (Tr. 194.) At that time he ordered strengthening therapy, a cane, and a prescription for Vioxx.

In January 2003 Walls reported to Dr. Henry that she noticed a significant increase in the strength of her lower extremities and a decrease in pain after only four physical therapy sessions. (Tr. 189.) Dr. Henry was encouraged with the improvement in Walls' symptoms and determined that he would not proceed with a hip replacement at that time but that he would re-evaluate Walls' condition in four to six weeks. (*Id.*) In March 2003 Dr. Henry noted that a Trendelenburg test[2] was positive and that Walls had hip pain. (Tr. 182.) He also noted that he was trying to delay a hip replacement for as long as he could and that he had encouraged Walls to use her cane at all times.

In April 2003 Dr. Henry noted again that a Trendelenburg test was positive and that walking was painful to Walls. (Tr. 173.) He also noted that x-rays showed AVN of Walls'

---

[2]

A Trendelenburg test is performed by asking the patient to lift one leg and then the other. The test is positive and suggests hip weakness, a bony deformity, or a dislocated hip joint if the patient's pelvis drops downward on the weighted side.

right hip without collapse.  However, he noted that range of motion in Walls' hip was not painful and indicated that he did not think that all of Walls' pain was coming from her hip; he believed some of the pain was caused by gynecological problems.  (*Id.*)

Dr. Henry continued to diagnose Walls with AVN and ultimately provided her with a total hip replacement on October 29, 2003.  (Tr. 153-58.)

The record contains little information from Dr. Henry after Walls underwent the hip replacement.  On November 12, 2003, Dr. Henry noted that Walls experienced spasms with exercises and ordered her to stop the exercises.  (Tr. 229.)  On December 18, 2003, he noted that range of motion in Walls' hip was not painful and that the incision was healing well.  (Tr. 228.)  He also noted that she was without a walker or crutches and gave her a cane to use.  (*Id.*)  Although Dr. Henry indicated that he would check Walls' condition by x-ray in one month, the record shows that he did not examine Walls again until February 10, 2004.  (Tr. 226-28.)  On that date he noted that Walls had "been falling because of weakness in her quads" with no apparent cause although she was being treated with "Nexium and appetite."  (Tr. 226.)  He noted that Walls' hip seemed "to be doing okay," that she walked without a limp, that a Trendelenburg test was negative, that her hips had good motion and were equal bilaterally, and that x-rays showed no evidence of fracture or loosening.  (*Id.*)  Dr. Henry advised Walls that he would monitor her but that he did not think she sustained damage from the fall.  He recommended physical therapy for the weakness in her legs.  (*Id.*)  There are no further records from Dr. Henry.

4

## II.    The Commissioner's Decision

On July 22, 2004, an Administrative Law Judge (ALJ) issued a decision in which he found Walls not disabled. (Tr. 18-25.)  The ALJ acknowledged that Walls alleged that she suffered from AVN and back pain and concluded that she had severe impairments. (Tr. 20.) He determined that Walls' impairments did not meet or medically equal an impairment listed in the regulations and that despite her impairments, Walls retained the functional capacity to perform sedentary work that did not involve prolonged walking. (Tr. 23-24.)  Based on vocational expert testimony, the ALJ determined that there were a significant number of jobs in the national economy that Walls could perform including the job of assembler, the job of inspector, and the job of grader/sorter. (Tr. 24.)   The Appeals Council denied review, and the ALJ's decision became the Commissioner's final decision. (Tr. 12-14.)

## III.    Discussion

Walls contends that the ALJ committed legal error and that his decision is not supported by substantial evidence.  She contends that the ALJ erred in according inadequate weight to an opinion from her treating physician, and improperly discounted her subjective testimony, and that his decision is conclusory and unsupported by medical and factual evidence.

Judicial review of the Commissioner's denial of disability benefits is statutorily limited to determining whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were used to evaluate the evidence.  42 U.S.C.

§ 405(g); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence that a reasonable mind might accept as adequate to support the Commissioner's decision. *Watson*, 288 F.3d at 215 (citation omitted).

In this case there is less than a scintilla of evidence supporting the Commissioner's decision. Specifically, the ALJ's decision that Walls was capable of sedentary work that did not involve prolonged walking is not supported by substantial evidence. There is no evidence in the record and none cited by the ALJ that would show whether Walls was capable, either before or after her hip replacement, of performing the extended sitting that is required of sedentary work or the occasional walking and standing required in sedentary work.

This is not a case in which there is physician opinion regarding the claimant's physical capabilities following orthopedic surgery. In *Kelley v. Chater*, 62 F.3d 335 (10th Cir. 1995), the claimant underwent hip replacement surgeries and was found not disabled. In that case, the ALJ had before him evidence that after hip replacement, the claimant's condition was "markedly improved" and that he was without pain; an opinion from the claimant's treating physician who released the claimant to work seven months after surgery; and an opinion from a consulting physician regarding the claimant's ability to sit, stand, and walk. *Id*. at 337. In contrast, there is no such evidence in this case.

Regarding the period before Wall's hip replacement surgery, Dr. Henry did indicate under his clinic's letterhead and on government benefit forms that Walls was disabled and unable to work. (Tr. 133, 149-50.) However, such opinions are characterized as legal conclusions rather than medical opinion. *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) ("Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.'").

Although Dr. Hyde, the consulting physician, indicated prior to Walls' hip replacement that she was able to "sit, stand, and move about without much difficulty," he did not indicate how long Walls could sit and/or stand before those physical activities caused pain or whether sitting and walking required in an eight-hour day (and in the ALJ's residual functional capacity finding) would be advisable for an individual such as Walls with AVN. Limiting and reducing weight bearing on a joint affected by AVN is thought to slow the damage of AVN and to be effective in delaying surgery for some individuals. *See* HealthLink, Medical College of Wisconsin, www.healthlink.mcw.edu/article /926046182.html (last visited October 18, 2005). Thus, prior to Walls' surgery it is plausible that Walls' physicians would not have approved of Walls working, regardless of whether she performed work that did not involve prolonged walking, because even restricted sedentary work would require Walls to exert pressure and to bear weight on her hip. Whether Dr. Henry would have restricted Walls from working, however, is not clear from the medical records. What is clear from the records is that Dr. Henry was concerned about limiting

7

Walls' weight bearing on her hip and that he wanted to delay a total hip replacement as long as possible. (Tr. 182).

Regarding the period after Walls' hip replacement, other than Walls' testimony regarding her limitations and abilities, which the ALJ rejected, there is no medical evidence in the record that would demonstrate the effect Walls' surgery had upon her ability to work. Although the absence of such evidence does not automatically deprive a decision of substantial evidence, in the absence of other evidence that would demonstrate the claimant's physical capabilities, the ALJ should request a medical source statement describing the types of work that a claimant is capable of performing. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (citing 20 C.F.R. § 404.1513(b)(6)). This is a case like *Ripley*. There is medical evidence regarding Walls' problems with her hip; however, there is no medical evidence that "clearly establish[es]" the effect Walls' hip problem had upon her ability to work or whether or to the extent her hip replacement surgery resolved those problems.[3] *See id*. at 557.

Further, the ALJ did not seek additional evidence regarding Walls' intermittent weight loss and the effect it had upon her ability to work. Although Walls' weight loss during the summer of 2002 was resolved, Dr. Henry noted on February 10, 2004, that Walls experienced weight loss of an unknown cause. (Tr. 226.) His examination notes indicate that the weight

---

[3]

In the absence of evidence, it must be concluded that the ALJ made his own medical conclusion as to whether Walls was capable of working despite her AVN and as to whether she was capable of doing so after her total hip replacement. The Fifth Circuit Court of Appeals has not yet determined whether such action is reversible error but has cited a decision from the Seventh Circuit Court of Appeals in which that court held that an ALJ is not authorized to make independent medical assessments. *Frank*, 326 F.3d at 622 (citing *Schmidt v. Sullivan*, 914 F.2d 117,118 (7th Cir. 1990)).

loss caused weakness in Walls' quadriceps that caused her to fall. (*See id.* "Apparently, she has been falling because of weakness of her quads . . . .") Dr. Henry ordered physical therapy and indicated that he would monitor Walls' appetite. (*Id.*)

There was no further evidence regarding Walls' weight loss or weakness in the record for the ALJ to consider. Although there is a report from Albert E. Telfeian, M.D., Ph.D., which indicates that Walls had 5/5 strength in her major muscle groups, the report does not address Walls' intermittent weight loss and whether her strength diminished during periods of weight loss or whether Wall's intermittent weight loss and weakness would or would not affect her ability to work. (Tr. 249-50.) Because the administrative record does not contain evidence in this regard, the ALJ should have obtained additional evidence. 20 C.F.R. §§ 404.1512(e), (f) (2005).

## IV.    Conclusion

Remand is required because the ALJ's residual functional capacity determination and ultimate conclusion is not supported by substantial evidence and because he erred in failing to obtained additional evidence regarding Walls' intermittent weight loss and the affect it had upon her ability to work.

## IV.    Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court reverse the Commissioner's decision and remand Walls' case for further administrative proceedings.

## V.   **Right to Object**

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: _____October 21_____, 2005.

NANCY M. KOENIG
United States Magistrate Judge

10